IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 22-225 |
| RONALD BENSON | |

**OPINION**

On June 6, 2023, Ronald Benson pleaded guilty to a one-count Indictment for violating the federal law banning people convicted of felonies from possessing firearms, 18 U.S.C. § 922(g)(1). The same day, the Third Circuit held that statute was unconstitutional under the Second Amendment as applied to someone who had been convicted of lying on his food stamps application. *Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023) (en banc). Benson now moves to withdraw his guilty plea and dismiss his Indictment, arguing that Section 922(g)(1) is facially unconstitutional under the Second Amendment, void for vagueness in violation of the Due Process Clause of the Fifth Amendment, and beyond Congress's legislative authority under the Commerce Clause. In the alternative, he argues that, as in *Range*, Section 922(g)(1) is unconstitutional under the Second Amendment as applied to him.

The Court recently addressed a similar set of challenges in *United States v. Jenkins*, 2023 WL 6534200 (E.D. Pa. Oct. 6, 2023).[1] There, the defendant's motion to dismiss the indictment was rejected because he had failed to put on evidence that he was engaged in conduct protected by the Second Amendment. *See id.* at *16. For the reasons stated below, Benson, too, was not engaged in conducted protected by the Second Amendment for two different reasons. Our

---

[1] There, the Court rejected a facial challenge to Section 922(g)(1) under the Second Amendment, along with void-for-vagueness and Commerce Clause challenges to the statute. *See Jenkins*, 2023 WL 6534200, at *1 n.1, *15-16. The Court thus rejects the same challenges brought by Benson here for the reasons laid out in *Jenkins*.

1

nation's historical tradition of firearm regulation also supports applying Section 922(g)(1) to someone with his criminal record. Therefore, Benson's Motion to Withdraw his Guilty Plea and Motion to Dismiss the Indictment will be denied.

## I. BACKGROUND

The below factual recitation is taken from the parties' briefing and testimony given in open court.

On June 3, 2022, an Acura MDX was carjacked. The next day, an officer of the Philadelphia Police Department located the car in West Philadelphia. Benson was standing near it.[2] As captured by the officer's body camera, when asked who owned the car, Benson pointed to a nearby building. The officer momentarily turned towards that building, but he turned back to the car as Benson reached into its passenger seat and fled down the street. Benson testified that he ran from the officer because: (1) he was armed,[3] which he knew violated the terms of his probation; and (2) he believed that being armed meant that it was possible the officer would kill him. The officer chased him around two corners before apprehending and disarming him with the help of a colleague.

That March, just a few months before this incident, Benson had pleaded guilty in state court to three offenses: (1) carrying a firearm without a license, in violation of 18 Pa. C.S. § 6106(a)(1) (a felony); (2) possessing a weapon on school property, in violation of 18 Pa. C.S. § 912(a) (a misdemeanor); and, (3) recklessly endangering another, in violation of 18 Pa. C.S. § 2705 (a misdemeanor). The previous year, Benson had brought a firearm into a school, where it had gone off—per his testimony, accidentally. He was sentenced to nine-to-eighteen months

---

[2] The Government does not allege that Benson was involved in the carjacking.

[3] Benson credibly testified that he carried a firearm for self-defense: he lived in a high-crime neighborhood and feared for his personal safety.

in prison and two-and-a-half years' probation.

Because of his prior criminal record, Benson's arrest while in possession of a firearm rendered him subject to the federal felon-in-possession law. 18 U.S.C. § 922(g)(1). A grand jury returned a single-count indictment for violating that law, to which Benson pleaded guilty. He now moves to withdraw that guilty plea and dismiss the Indictment under *Range*.

II. **LEGAL STANDARD**

Benson can withdraw his already-accepted guilty plea if he "can show a fair and just reason for requesting" it. Fed. R. Crim. P. 11(d)(2)(B). "Factors that a district court may consider" in whether there is a "fair and just reason" for withdrawal "include whether the defendant is asserting his innocence, the strength of the defendant's reasons for withdrawing his plea, and whether the government would suffer prejudice because of the withdrawn plea." *United States v. Kwasnik*, 55 F.4th 212, 216-17 (3d Cir. 2022). "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (quotation omitted).

A claim of legal innocence can be grounds to allow a defendant to withdraw his guilty plea. *United States v. James*, 928 F.3d 247, 253 (3d Cir. 2019). Thus, sufficiently raising "a complete affirmative defense, such as self-defense or entrapment" will allow a defendant to proceed to trial. *Id.* at 254. So too will a meritorious constitutional challenge to the crime of conviction. *See, e.g.*, *United States v. Clayton*, 2022 WL 2651848, at *4 (E.D. Pa. July 8, 2022); *United States v. Trujillo*, 2023 WL 3114387, at *2 (D.N.M. Apr. 26, 2023).

Here, Benson has brought a legal innocence claim, arguing that, under *Range*, "the felon[ies] which previously disqualified him from possessing a firearm . . . are not the type of

3

offense[s] which fall[] within this Nation's historical tradition of firearm regulation." Because the rules limiting when a defendant can withdraw a plea of guilty present no independent bar to this argument, the Court will proceed to the merits of his constitutional claim. If Section 922(g)(1) is unconstitutional as applied to him, his legal innocence claim has merit, and he will be allowed to withdraw his plea of guilty.

### III. DISCUSSION

Benson's as-applied challenge fails for two independent reasons, so he will not be allowed to withdraw his guilty plea. First, because he was on probation at the time of his arrest, he was not carrying a gun for the "lawful purpose of self-defense." *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008). Second, because he was recently convicted of an unquestionably dangerous crime, disarming him is consistent with our nation's historical tradition of firearm regulation. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022).

#### A. Second Amendment Jurisprudence

The Second Amendment provides, in full: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. As discussed at length in *Jenkins*, the caselaw governing the Second Amendment has changed dramatically in recent years. 2023 WL 6534200 at *2-4. The Supreme Court first recognized an individual right to bear arms in the home in 2008. *Heller*, 554 U.S. at 635. That rule was incorporated against the states two years later. *McDonald v. City of Chicago*, 561 U.S. 742, 768 (2010) (plurality opinion). The Court extended that right beyond the home last year. *Bruen*, 142 S. Ct. at 2135.

Importantly, *Bruen* also abrogated the traditional two-step constitutional analysis that

4

most courts had used to analyze laws' compliance with the Second Amendment, replacing it with what the Supreme Court described as a single inquiry: "If 'the Second Amendment's plain text covers an individual's conduct,' then 'the Constitution presumptively protects that conduct.' . . . Only if the government can 'demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation . . . may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.'" *Jenkins*, 2023 WL 6534200, at *3 (quoting *Bruen*, 142 S. Ct. at 2126-27).

The Third Circuit, in turn, applied *Bruen* to a Second Amendment challenge to Section 922(g)(1) in *Range*. 69 F.4th at 106. In holding that the law was unconstitutional as applied to someone who had been convicted of food stamp fraud decades previously and had not committed any violent offenses since, *id.* at 98-99, 106, the majority set out three questions that a district court must answer when applying *Bruen*: "First, determine whether the Defendant is among 'the people' protected by the Second Amendment. Second, determine whether his reasons for carrying a firearm were congruent with Second Amendment protections. Third, determine whether historical tradition protects the challenged regulation or its application." *Jenkins*, 2023 WL 6534200, at *9.

The first of these steps is forgiving by design. "Almost everyone is among 'the people' whom the Second Amendment protects." *Id.* at *9 (citing *Range*, 69 F.4th at 101-02). But, while it was not at issue in *Range*, 69 F.4th at 103, the second step has real teeth in the context of constitutional challenges to criminal indictments. *Jenkins*, 2023 WL 6534200, at *9-11. The right to bear arms has never been absolute. *See, e.g.*, *United States v. Huet*, 665 F.3d 588, 602 (3d Cir. 2012), *abrogated on other grounds by Rehaif v. United States*, 139 S. Ct. 2191 (2019); *United States v. Jackson*, 555 F.3d 635, 636 (7th Cir. 2009). Instead, the Second Amendment

protects the right to carry a gun for specific purposes: militia service, *Heller*, 554 U.S. at 599, hunting, *id.*, as well as the "lawful purpose of self-defense," *id.* at 630. Neither *Bruen* nor *Range* expanded the scope of conduct protected by the Second Amendment. *See Jenkins*, 2023 WL 6534200, at *11. Therefore, as was the case pre-*Bruen*, determining whether the Second Amendment protects Benson requires the Court to examine whether the Defendant was carrying a gun in accordance with one of the Second Amendment's protected activities. *Id.* at *6. As the party bringing an as-applied challenge to his indictment under Section 922(g)(1), Benson bears the burden of showing by a preponderance of the evidence that he was engaged in protected conduct. *Id.*

Of course, if Benson carries his burden, that does not end the analysis, as the Government can proceed with the indictment if it can point to the necessary analogous set of historical firearm regulations. The Supreme Court has offered some guidance on how to conduct this analysis:

> *Bruen* provided some signposts on how to engage in the analogical reasoning it requires. The Supreme Court identified "at least two metrics" on which a court should compare a challenged regulation to the historical record: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." 142 S. Ct. at 2133. And "when a challenged regulation addresses a general societal problem that has persisted since the 18th century"—such as disarming those who have committed serious crimes, as West has—"the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131. That said, "a historical *twin*" is not necessary, and the challenged firearm regulation need not be "a dead ringer for historical precursors." *Id.* at 2133.

*United States v. West*, 2023 WL 8091984, at *2 (E.D. Pa. Nov. 21, 2023). And wherever the outer bound of our nation's historical tradition of firearm regulation lies, "disarming those deemed to be dangerous, either based on their status or their conduct" comfortably falls within the record. *Id.* at *4. Thus, Section 922(g)(1) is constitutional as applied to people who recently committed violent crimes like armed robberies. *Id.* The Court will apply these principles to

Benson's motion.

### B. Benson Was Not Engaged in Second Amendment Conduct Because He Was on Probation[4]

As laid out in *Jenkins*, the Second Amendment only guarantees a right to bear arms in furtherance of specific conduct—at the very least, self-defense, hunting, and militia service. 2023 WL 6534200, at *6. With respect to each of these activities, the Supreme Court repeatedly has defined the scope of the right to bear arms "with reference to lawful conduct only." *Id.* at *11 n.12; *see also id.* at *10 n.10, *11 n.14. Because Benson's right to bear arms had been "suspended" as a condition of his probation, and the validity of that suspension is not before the Court, he could not have been engaged in protected "Second Amendment conduct" at the time that he was arrested.[5] *Kanter v. Barr*, 919 F.3d 437, 461 (7th Cir. 2019) (Barrett, J., dissenting); *see also United States v. Terry*, 2023 WL 6049551, at *4 (W.D. Pa. Sept. 14, 2023).

Such restrictions are constitutionally unremarkable. *See United States v. Shaw*, 2023 WL 3619416, at *4-5 (D.D.C. May 24, 2023). It is well established that "[p]robation, like incarceration, is a form of criminal sanction imposed by a court upon an offender." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (quotation omitted). Probation "is simply one point . . . on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." *Id.* As is the case with incarcerated

---

[4] Because the Government concedes the issue, the Court assumes without deciding that, given the Third Circuit's broad interpretation of the Second Amendment's text at this step, Benson is among "the people" whom the Second Amendment protects. *Range*, 69 F.4th at 101.

[5] At a hearing and in supplemental briefing, the parties agreed that Benson's probationary status should be analyzed as part of the third question that the *Range* court asked. But having reviewed recent Second Amendment caselaw, the Court concludes that it is relevant at both the second and third steps in that test. Where, as here, the constitutionality of someone's probationary status is not being challenged, it is relevant to the inquiry into whether he was engaged in conduct protected by the Second Amendment. Where, on the other hand, that condition's constitutionality is directly at issue, the Government must produce a sufficiently robust historical record to satisfy *Bruen*.

individuals, then, it "is always true of probationers . . . that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.'"  *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)) (second ellipsis in original); *see Gall v. United States*, 552 U.S. 38, 48 (2007) (recognizing that, while "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms," both deprive someone of "the absolute liberty to which every citizen is entitled" (quotation omitted)).  Such restrictions may validly impinge on a probationer's Second Amendment rights, just as they may impinge on a probationer's First, Fourth, or Fifth Amendment rights.  *Shaw*, 2023 WL 3619416, at *4-5.  "The constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'"  *Bruen*, 142 S. Ct. at 2156 (quoting *McDonald*, 561 U.S. at 780 (plurality opinion)).  That is just as true of the right's breadth as it is of its limitations.

To be sure, requiring someone to surrender their firearms may be legally problematic if that condition is totally unrelated to the penological purposes that probation is supposed to serve. The Third Circuit has held that a condition of probation that deprives someone of a constitutional right "must be 'narrowly tailored and . . . directly related to deterring [the defendant] and protecting the public.'"  *United States v. Loy*, 237 F.3d 251, 256 (3d Cir. 2001) (quoting *United States v. Crandon*, 173 F.3d 122, 128 (3d Cir. 1999)); *United States v. Stine*, 675 F.2d 69, 72 (3d Cir. 1982) (citation omitted) ("Imposition of a probation condition which may impinge on constitutional freedoms requires the sentencing court to weigh the purposes of probation, the extent to which probationers should be accorded the constitutional rights enjoyed by other members of society, and the needs of law enforcement."); *see also generally* U.S.S.G.

§ 5B1.3(b). But Benson has not argued that the conditions of his probation are inconsistent with *Loy*, so the Court is not called upon to make such a determination.

Because the conditions of Benson's probation barred him from possessing a firearm, and the legality of that condition is not before the Court, he could not have lawfully been bearing arms for the purpose of self-defense when he was arrested. His probation thus is an independent basis for concluding that Benson was not engaged in "Second Amendment conduct" and does not have a meritorious legal innocence claim. *Jenkins*, 2023 WL 6534200, at *16.[6]

### C. Benson Committed a Dangerous Offense

Moreover, even if the Court were to overlook Benson's probation, the result would be the same because he recently committed a dangerous crime that would render his disarmament under Section 922(g)(1) consistent with *Bruen*'s historical-analogy test. As discussed above, Benson pleaded guilty in March 2022 to three offenses: carrying a firearm without a license, possessing a weapon on school property, and recklessly endangering another person. Possessing a gun on school property, especially when that gun subsequently goes off, is profoundly dangerous.[7] Therefore, the Indictment is consistent with the Second Amendment independent of Benson's probation because the Government has carried its burden at the third step in the *Jenkins* analysis.

The Court recently had occasion to expound the dangerousness theory in *West*, so it will not fully reprise that discussion here. 2023 WL 8091984, at *3. What matters for this case is

---

[6] Thus, although he testified credibly that he was carrying a gun for self-defense, the Court takes no position on whether Benson was in fact—based on both his testimony as to his subjective motivations and the totality of the circumstances surrounding his arrest—carrying his gun for that lawful purpose.

[7] It is irrelevant to the Second Amendment analysis that Pennsylvania has classified this crime as a misdemeanor, not a felony. Section 922(g)(1) applies with equal force to "felonies or felony-equivalents," *Range*, 69 F.4th at 102, as long as the crime is "punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1). Possession of a gun on school property is a first-degree misdemeanor. 18 Pa. C.S. § 912(b). Such misdemeanors are punishable by up to five years in prison. 18 Pa. C.S. § 1104(1). Therefore, Benson's conviction for bringing a gun into a school, standing alone, would render him subject to Section 922(g)(1)'s disarmament.

9

that, as in *West*, Benson recently[8] committed a crime that put others in mortal danger.[9] Even if he did not do so intending to shoot anyone, bringing a gun into a school is a paradigmatically dangerous crime because it is disturbs the peace. The historical record is replete with laws aimed at disarming those who pose that very threat. *See, e.g.*, *Bruen*, 142 S. Ct. at 2145, 2182 (Breyer, J., dissenting)) (discussing the common-law offense of "going armed 'to the terror of the people'"); Militia Act of 1662, 13 & 14 Car. 2, c. 3, § 13 (1662) (authorizing "seiz[ing] all arms in the custody or possession of any person . . . judge[d] dangerous to the Peace of the Kingdom"); *Bruen*, 142 S. Ct. at 2142-43 (citing 1692 Mass. Laws no. 6, 11–12; 1699 N.H. Acts and Laws ch. 1) (discussing colonial laws authorizing disarmament of "Affrayers, Rioters, Disturbers, or Breakers of the Peace"); *West*, 2023 8091984, at *4 (noting that a forerunner of the Second Amendment in Massachusetts would have applied only to "peaceable citizens"); *id.* (discussing antebellum laws disarming "those threatening to do harm" unless they posted a surety bond).

Bringing a gun to a school poses the same risk to the peace, so modern legislatures can respond by disarming those who have done so. Schools are crowded indoor spaces where even an accidental discharge could strike and kill a child or teacher. Even if it is not fired, given our nation's extensive, bloody history of school shootings, merely bringing a gun onto a school's

---

[8] The Third Circuit's opinion in *Range* has opened up the possibility that Section 922(g)(1)'s lifetime disarmament may lift if an offender is no longer like those who were disarmed at the Founding and during Reconstruction. *Jenkins*, 2023 WL 6534200, at *13-14. In *Range*, the appellant had committed a nonviolent crime decades before challenging his disarmament. 69 F.4th at 98. Here, however, Benson was convicted less than two years ago and has conceded that he has not abided by the terms of his probation since being released.

[9] While the Government does not point to an eighteenth- or nineteenth-century law disarming people who brought guns onto school grounds, that is not the proper level of generality at which to conduct the historical analogical reasoning that *Bruen* demands. *See Jenkins*, 2023 WL 6534200, at *7-8; *West*, 2023 WL 8091984, at *5. Instead, the proper question to ask under *Bruen* is whether disarming someone because he or she brought a gun onto school grounds would be based on the same judgment about that person as can be found in the historical record—*i.e.*, that his or her "possession of guns would endanger the public safety." *Kanter*, 919 F.3d at 464-65 (Barrett, J., dissenting).

grounds can cause panic and traumatize those who might have to shelter in place while the situation is resolved.  Because bringing a gun to a school is the sort of conduct that earlier American and British governments would have considered a threat to the peace and thus dangerous, a conviction for doing so is a valid basis for disarming someone.

For the reasons set forth above Section 922(g)(1) is constitutional under the Second Amendment as applied to the Defendant here.  Accordingly, Defendant's Motion to Withdraw Guilty Plea and Motion to Dismiss the Indictment will be denied.

An appropriate order follows.

**BY THE COURT:**

*/s/ Wendy Beetlestone*
———————————————
**WENDY BEETLESTONE, J.**